Bridgeport Way Community Association The Bridgeport Way Community Association is a citizens group in Pierce County here. Their members were precluded from communicating with their elective representatives in the privacy of their own homes. The issue here is important to frame correctly, because this is not a case involving restrictions on communication with elected officials at City Hall during a City Council meeting or anything of that sort. These were private communications, one-on-one, between the individual members of the citizens group and individual City Council members. And these were communications about political matters pending legislation before the City Council. It is the type of communication, that one-on-one communication with your elective representative, that the Supreme Court has stated is probably the most effective fundamental avenue of political discourse. And the issue presented in this case is whether the City's obstruction of that one-on-one communication violates the First Amendment. The City and Walmart try to reframe the issue, because they can't win the issue that's truly presented. They try to reframe the issue as one of, what are the City's rights to control the proceedings at a City Council meeting? And they cite voluminous cases that deal with that and similar issues. Those cases have nothing to do with the issue presented here. Well, could you, in pursuing that argument, could you deal with the fairly sweeping language, if not the holding of night? Because there's an awful lot of talk in there about willing listeners and avenues of communication, but the government's right not to have to listen. And there is the element in this case that the City Council members were acting pursuant to a City attorney or Assistant City Attorney's legal advice. So trying to navigate through and read, you've characterized it in one way, but still there's the element that they were being contacted, as you say, as their legislators. So it would be helpful to get your thoughts on how you navigate or relied the statement from night. Well, in night, the Minnesota Community College case, the public employee collective bargaining, exclusive bargaining unit, et cetera, et cetera. Right. And the opinion seems to go beyond the collective bargaining structure there and make some fairly broad announcements. There may be some broad language, but as we discussed in our brief, the facts of that case, and it was pointed out actually in the majority opinion in that case where they took issue with the dissent, that all they were addressing were limits on the rights of the professors and the employees to communicate with the employer during the formal meet-and-confer sessions. And the majority opinion went out of its way, both in the text and in a footnote, to point out that the employees had the opportunity to informally communicate with the employer outside of the formalized meet-and-confer sessions. And the majority pointed out that that informal communication was unimpaired as a result of the statute at issue there. In fact, in the footnote it even said, in the record it was a little cloudy because it said, initially there was some question as to whether the legislation also impaired that one-on-one communication, but after the initial rocky road, it's been clear that it does not impair that informal communication. So that was definitely an issue that was discussed between the majority and the dissent in that case, and it clearly resolved in our favor. I think perhaps the language to which Judge Fischer is pointing, and if he isn't, I am, is the statement in the majority opinion, nothing in the First Amendment or in this Court's case law interpreting it suggests the rights to speak, associate, and petition require government policy makers to listen or respond to individuals' communication on public issues. So the issue, it seems to me, and I need your help on this one, that if this is correct, they don't have to listen, but that doesn't interfere with your ability to speak. And they seem to be drawing a distinction that you have a First Amendment right to speak, but they don't have a constitutional requirement to listen. And, you know, I agree with the statement in general, but specifically as applied to this case, if the facts were that we went up and knocked on the door of the council members and said, we would like to talk to you about this issue, and they said, no, we don't want to talk to you, that would be the end of it. We didn't have a right to force them to listen to us. But the facts of this case are these council members wanted to listen to us. If you take a look at the record, they wanted to listen to us. I think it was Council Member Gernon said, I would like to speak with you about this, but I've been directed by the city attorney not to. So this is not a case where the council members, the legislators, the elected representatives said, we don't want to listen, go away. They wanted to listen. And the city attorney, assistant city attorney, gave them improper advice and directed them not to. And that's why this case has nothing to do with that broad language that you see in the night. Well, what happens then in the context of the city council meeting when your clients make their presentation, there's an opportunity to now take communication, and there may have been a couple who were willing to do that, but at least as I understand it, there was no official action opened up. And so why isn't that some form of ratification of the city attorney's directive? In fact, they were carrying out a policy of confining communication to the formal channels, and in the formal channel they had heard all they wanted to hear through the planning commission. Because you have to distinguish between the formal channels, as you were, and the informal, the one-on-one lobbying. And what that vote was about, or the non-vote, I don't remember which form it was, was to say, should we open up the formal process some more? Should we have a public hearing in front of the city council? Should we open up the record? And so the council said, no, we don't want to extend that formal process. That vote was not a vote on whether there should be an allowance for one-on-one lobbying in the privacy of people's homes, outside the formal setting, weeks earlier, that would in no way have delayed these proceedings, the city council's ultimate resolution of this matter. So that would not have been a ratification for that reason. It's just a different issue. The ---- Were your clients prohibited from sending letters or e-mails or otherwise contacting the council persons with their point of view? Yes, they were. It was not just oral. It was ---- I read the e-mail. I didn't see anything that said that any of the constituents could not otherwise contact the legislature, get their message across by just sending in letters, e-mails, like is typically done with the Senate on big issues. Sure. The record was closed. The formal record was closed, and so you could not present information, whether it was orally by calling them up on the telephone or, as in this case, Mr. Warfield brought a package of information, and the council member returned it to him. See, that's the distinction. He was going to express his message, but the councilman, it didn't have the obligation to listen to it. And it's a Knight case. Right. I understand. If the council member said, I don't want to open up this package and read your information or I don't want to speak with you because I've had enough or for whatever, you know, personal reason, that would be Knight. But here, the record is that these council members wanted this information, and based on the erroneous advice from the city assistant and the city attorney, wouldn't allow the communication to occur. So it wasn't because they didn't want it. As I said at the beginning, if that council member said, I'm returning this package to you because I've read too much, I've got six notebooks, I've had it, I'm not reading this, that's a different issue. But the issue here is that council member and the other council members wanted this information but were erroneously directed by their city attorney that they would be violating the due process clause if they read it. Well, there was a process in place, right? They were going through this process with public commentary and everything. Was her advice incorrect that if you heard from, after the public comment period was closed, if you heard from more people and incorporated more information into your decision-making, that would be inconsistent with the process? Yes. That was the direction they were given by the assistant city attorney, and it was unconstitutional direction. But was it correct in terms of the process that was being undertaken? You mean was it consistent with the city code process that was set out? The GMA process and public comment period and the way these decisions get made? Okay, so this is a legislative matter, not quasi-judicial. And so there are some minimum requirements, I guess is the way I would say it, that the minimum requirements are you have to hold a public hearing at some point.  In the city of Lakewood, they have a requirement that you go through a planning advisory board. So those minimum requirements are there. There is nothing in the law, either the city, state, and certainly not the federal level, that prohibits one-on-one lobbying above and beyond the minimum formal process that is set out in the city and state laws. So when the assistant city attorney says, here is a process that we have, make your complaints known to the planning advisory board, don't come and talk. You know, she's right that that was a part of the opportunity to express themselves that my clients had. And that was a minimum requirement of city and state law. But city and state law did not impair or restrict the rights given by the federal constitution that they can, beyond that, have a one-on-one conversation with their elected representative. And were the city council members party to the first stage, the planning advisory board? Were they, those are just other, what, are they appointed citizens? Yes, it's an advisory board. And then there was, so they came down with a report and recommendation after hearing testimony and presentations. Right. And then their report and recommendation goes to the city council. And the city council then, was there a scheduled meeting at which it would then hear or could have heard further information if it wanted? That was a formally noticed meeting and the like. Right. And they had the option but not the requirement under their city code to open it up for public testimony. And they chose not to. And Knight says they can do that. Right. So, and then in terms of, to follow up on Judge Wardlaw's question, what you're saying then is that in the interval period, there was no city ordinance that said once it's left the planning board and before the public hearing, before the city council, there's no prohibition about approaches to city council members, at least on a one-on-one basis. That's right. And if there were one, it would violate the Constitution, would be our position. But there wasn't one. But there wasn't. Okay. Right. So now, having all that happened, can I ask you, because of the time, your remedy would be to what, wipe out this ordinance altogether? Right. The clearly ordinance adopted in violation of the Federal Constitution would be invalid. The main issue that's been in the briefs is whether that invalidity is retroactive, whether it's void ad initio. And that is a matter of state law under the cases we cited there, and Coral Springs in particular. And under state law, it is clear that invalid ordinances are void ad initio. And we've cited a number of cases. The State Outreach, Goodner, Responsible Urban Growth Group, and Glaspie are all cases where the Washington Supreme Court has said an invalid ordinance is invalid as of the date it took effect. It's as if it was never enacted. It's a nullity. And all those cases, to address an argument from the other side, all three of those cases deal with ordinances or statutes that were declared invalid, not because of the substance of the statute or ordinance, but because of the process that was used to adopt them, just like we have here. Two of those cases were cases where there was inadequate notice. A third was a violation of the single title rule. And in all those cases, the State Supreme Court held that it was void as of the date it was adopted. Why wouldn't this be more appropriate? Well, I'm just wondering if there is no, is there any evidence that the outcome of the ordinance would have been any different if your clients had been allowed to communicate with the city council members? Well, I think that goes to the, there's no evidence one way or the other. Certainly, I think that goes to the heart of the First Amendment and to some of these Supreme Court statements about that this is the most fundamental, most effective method of communicating with your legislator is the one-on-one. And certainly, we believe that if we had that chance to communicate with them, that it would have made a difference. One point in particular on that, we never had a chance to discuss with the city council the recommendation made by the advisory board. We never had an opportunity to discuss with the city council the final environmental impact statement. Those both, both that recommendation and the final impact analysis were published after this cutoff took effect. So, we never had a chance to talk with them about that. Was there, before the actual meeting, was there any expectation that your clients would not have an opportunity at that city council meeting to speak and be heard on those points? I guess we weren't sure whether they were going to open it up or not. We knew that they were being very restrictive in monitoring communication, but I don't know that we had a firm belief one way or the other. I'll reserve the remainder of my time. Thank you. Can I ask a question before your time is up? Yes. In this case, the problem, as I understand that you're asserting, is the action of the city attorney in directing folks not to talk to you. So, could you tell me specifically how that ties into the First Amendment? Is this a type of prior restraint or what is your theory that it ties in? Well, we stated several in our briefs. It is a prior restraint. It prohibited the speech before it occurred. Under prior restraint analysis, it can be upheld, among other things, only if it is, only if there's a compelling state interest. There was no state interest. I understand the state or city's interest in regulating proceedings at the city council meetings, and that's why special rules apply to city council meetings, as stated in Walmart's brief, but they have no compelling, no interest at all, let alone a compelling one, in prohibiting constituents from talking with the legislators on a voluntary basis in the privacy of their own homes. Well, who was the restraint? The restraint of the city council or restraint of your clients or both? It was both. The assistant city attorney both directed the city council members not to speak with my clients, and in a phone call that's reflected in the record, Mr. Warfield was, in his words angrily and otherwise, directed by the city attorney to cease these communications. If the city attorney had a good reason for directing them not to speak, I take it there's no binding authority on them to obey the city attorney. There's nothing in the law that says, in the law of the community or the city that says the city attorney tells you not to speak, you can't speak. They're just doing it. Right. Well, there's two things. One, at a practical level, you have lay members on the city council, and if the city attorney says you're going to violate the due process clause if you do this, it's practical, the practical effect. And second, if I may, the Constitution doesn't require us to show that there was a prohibition. It's a chilling effect on First Amendment protected speech. And that communication from the city attorney certainly had a chilling effect, as it's very evident in the record. Suppose the city attorney had a good reason for suggesting they not or telling them not to speak. Would that answer your First Amendment challenge? I'd have to know what the reason was.  And then, of course, we have this type of interesting example of competing State interests that was being protected. And then it would need to be the narrowest restriction possible. We don't have either of those here. We don't – I don't know what their compelling State interest is, and this is – That's not in the record, and that hasn't been? Well, the only interest reflected in the record were, you know, the two – Fairness and due process. Yeah, the due – you know, that was going to violate due process and that they were going to – they would have to give notice to other parties that they were being lobbied by our parties. I mean, can you imagine members of Congress being noticed by others? If they started talking to one side, they'd have to talk to the other side and have to open it up for another hearing. Right, which was not true. I mean, if I lobbied – So the – if the attorney, city attorney, gives them that direction, is your case based upon whether the direction is good law or bad law? Suppose that – suppose it's good law. Suppose the attorney, city attorney, is right. Does that do away with your case? If the attorney said – if the attorney said you can't speak with your constituents and had a – with some – Suppose city attorney says you can't speak with either side because once you do, we have to have an open hearing. Yeah. And suppose that happens to be the law. What would that do to your case? I – you know, I can't fathom – I hate to battle with hypotheticals, but I can't fathom – I'll get you to fathom. It's like the U.S. – it's like saying, okay, the U.S. attorney can tell a member of Congress that if you speak with a representative of Exxon, you also have to speak with a member of Sierra Club. I just can't fathom that being lawful. Well, I don't know what the city regulations are, but I'm asking you to make that assumption.  If the city attorney was correct in giving them advice what to do, what would that do to your prior restraint argument? Well, I think the – in that case, I think the – you know, it's sort of a – almost a circular question. If you're assuming that the restriction was lawful, then it's lawful. But we're arguing that the restriction was not lawful. Has that issue been – has that issue been decided, whether the city attorney's advice was correct or not? Well, I think that's – I mean, in a manner, that's the issue that's presented here. There's no city ordinance, you said. So if – but if there were, if the city ordinance precluded communication in the interval between the planning commission and the city council hearing, that would be a local ordinance. You might challenge the ordinance, I take it. Exactly. If that's the question. But here you are challenging – in the absence of an ordinance, you're challenging the ad hoc advice of an assistant city attorney. Thank you. That's correct. And is that the – is that the law? Yes. Thank you. All right. Thank you, counsel. He did well. Yes, he did. If it please the Court, my name is Diana Blakeney, and I represent the city of Lakewood and Heidi Ann Wachter, the city attorney. I'm sharing my time with Jack McCullough, who's representing Walmart in this matter. I want to get back to basics here, and I think we need no further than night to understand what the basics are, is that we have a representative form of government, and it's plaintiff's burden to show that they had a constitutional right before they could even go to the next step to show that there was government interference with that right. Well, they do have a constitutional right of expression and right to petition, and you rely heavily on night. And I'd just like to – if you could focus on the practicality of the procedure here that was instituted. In my neighborhood, we have a homeowner's association, and each month we have a member of the city council, either the local representative or an adjoining representative. I don't happen to go to these, but I get their bulletins, so I'm aware of it. Okay? And each month the city council member comes to respond to the concerns of his, in this case a male, constituents. One of the concerns, very active in our neighborhood, is Best Buy going into a local neighborhood, and before it was a Walgreens. And every time the city council member would come before the homeowner's association, they would be interrogated intensively about what the city council was planning to do on the permitting process. Both of those projects are undergoing. Now, I understand that the city attorney's advice, if applied to my somewhat real-life hypothetical, that it's your understanding of night that it would be for a city attorney to instruct the city council members who are attending the homeowner's association that they can go to the meeting, but they may not, even though we'd like to, they may not listen to or comment upon any of the homeowner's expressions of opposition to or concern about that project. Where am I wrong in my understanding of your position? Well, I think by the mere fact that the city council people chose to go to the homeowner's association meeting indicates that they were willing listeners. No, they were willing to listen. Well, okay. But let's say they were willing to listen about everything except the Walmart proposal because they were told that they couldn't listen to that. Yeah, there are lots of other issues that they might go there for. But I accept your notion, then, that they were a willing listener. So, still, I understand, at least according to counsel, that the city council members who were foreclosed from speaking to or listening to were willing listeners but were acting in response to the city attorney's advice that they could not. Yes, and I'm not sure but that I may have lost your question there. I think what plaintiffs in this case need in order to prove their case is that now we've got three parties here. We have the willing speaker and the willing listener and the government interfering with both parties' constitutional rights. But that's not what we have in this case. What we have is people who are willing to speak but have no right to talk to the government policymaker and have them hear them or listen to them. Oh, I'm sorry. I'm sorry. But no right to have them, but you do have in your, at least as we understand the fact, I do anyway, there are at least two or three of these city council members who said they were willing to listen if it were up to them, but they have been instructed by the state in the middle there that they couldn't. But the state, the city attorney, is not a separate entity from the city council. She is an agent of them. She is their advisor. She has no power over them other than to give legal advice and, you know, whether someone listens to their attorney or not. Well, is there evidence in the record that the reason that the council members declined their willingness to speak was because they simply decided to go along with advice of the city attorney even and that that was just fine with them? I think there absolutely is, and I think that evidence becomes perfectly clear. I think it's on the meeting where council for Bridgeport, who had already delivered a letter ahead of time saying, I don't care what your city attorney told you, you don't have to listen to your city attorney. You have constitutional rights as individual council people or as a group not to take that advice. Council members got that letter before they even went to the final city council meeting where they voted on whether to take, to close the record. And, again, at the time of that meeting, council for Bridgeport stood up and said, if any of you took that advice but or considered you were a willing listener and then all of a sudden big bad city attorney says you can't do it and you chose to listen against your will, step forward now, make a record of your protest. None of them did. They were all, none of them were willing listeners to this. There had been a long public process. They had access to the PAB records, including every letter, all of the oral commentary that this particular group and other groups had made on all ten of the issues that were in front of the council at that time. So we don't have the three separate entities that plaintiffs need in order to sustain their burden. If there are no further questions on what I've said at this moment, I'm going to turn the podium over to my co-defendant's counsel. Well, I have a question. Does your position depend on whether or not the city attorney was legally correct in advising the council members that they should not be taking comments piecemeal? No. Because then they'd have to open. That's irrelevant. That's completely irrelevant. And why is that? Because? Because she is their agent. She is their advisor. If you have a city attorney as a gatekeeper, the constitutional gatekeeper to the legislators, nobody is going to take that job. You're saying that the city council people had the right to tell her to disregard her advice? Completely. And I'm sure they do it regularly. Thank you. Thank you. Please be seated. Thank you, ma'am. Please record. My name is Jack McCullough. I'm here on behalf of Appellee Wal-Mart Stores Incorporated. And I'd like to start out by focusing on the practical realities that Judge Fisher mentions in this case. This is a case in which we had months extending beyond a year of process leading up to the fateful days in November of 2003. It involved an application, an opportunity to comment on that application in the spring of 2003. And BWCA, the appellant, submitted extensive comments once, numerous times to that and then to this environmental impact statement. How much face time in public did the city council have on this controversial proposal? The city council did not have face time. And they're not intended to have face time under the code on this proposal unless they choose to. The process is set up in Lakewood Code 18A02-420 to give the city council, as you've heard, the discretion to reopen the record. But typically the record ends at the Planning Advisory Board and then the city council looks at that voluminous record, including extensive comments over many months from the appellants here, and renders its decision. What this is is a case in the last minute, obviously the last few days before a council vote, the appellant's deciding we want to have another bite at this apple. And the city attorney... It's sort of part of the democratic process. Well, it can be. But the democratic process, Your Honor, obviously is allowing the council to operate within the ambit of its defined process. And it's a process which I will note has been upheld in state hearings boards and state court cases below this. So there's not a question about whether the process that the city... Well, I don't think they're attacking the process. I think what they're attacking is this interval in which, under night it would seem, because Justice O'Connor made mention of lots of people lobby Congress all the time on unequal distribution of access and the like. But when they want to control their proceedings, they sure may, and they don't have to... So isn't the question here whether or not the interval process where individual council members were denied under an instruction from the city attorney that they would be violating Constitution if they were, in fact, to become or be willing listeners? The city attorney did give that advice. And the indication in the record is that the city councilors did pay some attention to that advice. I can't speak for them other than what's in the record as to whether they might have changed their mind. Obviously, there's case law in the State of Washington as well as instances in the City of Lakewood when city councilors disregard the advice of their city attorney. The city attorney's judgment at the time, and this is not a predicate for the appellee's case here, but was based on a concern in part, we believe in the record, of a possible appearance of fairness violation. According to Knight, that's not a problem. No, but in Washington State law, it is. I see. And RCW 42 treats cases that are quasi-judicial cases in the State, which permanent cases are in Washington, unlike in California, as being subject to certain due process protections and ex parte contacts are prohibited. And indeed, at the Planning Advisory Board level, which occurred on September 18th, just two months before, there had been an active exchange among council and the parties in the Planning Advisory Board about the necessary recusal of a member of the Planning Advisory Board in light of these state law protections. Now, ultimately, this issue as to whether this was a quasi-judicial or a legislative matter was resolved by the State's Growth Management Hearings Board many, many months later and determined that it was indeed a legislative matter. But the city attorney was acting in excess of caution at that point with respect to that issue. The council meeting, Mr. Fisher, that you point out to, I think is telling because the two council members who appellants rely on as being possibly interested listeners, which are Council Members Jernan and Humphrey, were there present. All seven members were present at the council. Council Member Finnegan moved to reopen the record. And this was a point at which they were freely able to reopen the record under the city ordinance. There was no so-called chilling effect from the city attorney. There was a process to reopen. And if we had willing listeners who wanted to listen, they could have. But that motion of Council Member Finnegan died for lack of a second. So the council members then moved on. Well, that's in the formal process. So at that point, in order to exercise that right, the willing listener had to get a majority. That's correct. And I guess I was pointing out as to the willing listener, Your Honor, merely that the two council members on whom appellants rely here would not second this motion and then ultimately voted to confirm the sufficiency of the record, both Council Members Jernan and Humphrey. I'm not sure what inferences one draws when you're back into the formal process and other institutional concerns are at work here. I don't live in Lakewood. And the city council members live with what they've done. And as Justice O'Connor said, there may be relief at the polls. It's not in law. So I'm just trying to understand the dynamic of how this thing played out. I guess an answer then more directly to your question is that the appellants here are trying to create, we think, a kind of a fourth category in First Amendment jurisprudence, and that is this category of some special protection for these informal conversations. It's called the First Amendment. Well, it is called the First Amendment, yes. No, I absolutely agree, Your Honor. I'm reading the biography of Ben Franklin, and you'll understand why the First Amendment's there. That's true. Let me ask you a question, if I could. Yes, Your Honor. In listening to the opposing counsel, he said his First Amendment right deals with a statement made by the city attorney, and that was a violation of the First Amendment. And then he indicated that in his view that he might lose his argument if what the city attorney did was legal. Now, we have the statement, at least the email statement. We don't know what else was said. We have the email statement of a position taken by the city attorney's office as to why they should not talk to these folks. My question to you is can you support the position taken by the city attorney's office as an appropriate position under the law that existed at the time? Yes, we can, Your Honor. And that was my conversation a moment ago regarding the appearance of fairness doctrine in the state of Washington, which is codified in RCW Title 42 and has a long history dating back to Smith v. Skagit County in 1969 in this state where, unlike in California and Oregon where land use decisions are legislative matters and you're free to lobby your council members, in the state of Washington, most permit and site-specific land use decisions are quasi-judicial and they enjoy due process protections. Ex parte communications are prohibited. What law is that? Can you cite it to us? Yes. It's the appearance. Well, it starts with Smith v. Skagit County, which is a 1968 or 9 case from the Washington Supreme Court, which was followed by Crowbuck v. C-H-R-O-B-U-C-K v. Snohomish County. Later, in about 1981, the law was codified, and it's at RCW 42-17, I believe. So if I read that case, that statute, I could then look at what the city attorney has said, and it would be an appropriate and consistent application of that law as to the advice you gave the members of the city council? I think it provides a clear basis for her legal advice, yes, Your Honor. Now, as I mentioned, subsequently, there was a growth management hearings board, which is a state review board for these comprehensive plan amendments, looked at this, and it upheld the process and upheld the action of the city council, and its findings also determined at that point that the action that was taken was legislative. This was months later. But at the time that that advice was given, it was two months after the planning advisory board meeting where there was a long dialogue about the possible conflict of interest of one of the council members and one of the planning advisory board members, who ended up then actually two of them, and one of them had to refuse. And those are issues that only arise under the appearance of fairness doctrine. They would not be implicated if this were a purely legislative action. So the city attorney looked at that, and I think out of caution, did not want to contaminate the record, the process moving forward. When exactly did the city attorney issue this advice? As best we can tell, the appellants on about November 12th or 13th were making their overtures to the city council members in their homes, that sort of thing. It has to be at least before October 31 when the e-mail was forwarded to Andy Gernon. It had to be before. If the date on the e-mail is the 31st. That isn't the date on the e-mail. That's why I'm wondering when in the process the advice was actually given. It would have been after September 13, which is the planning advisory board meeting, and then before November 17. The record reflects that the overtures were occurring on the 12th and 13th of November. Is this the e-mail to Andy Gernon? Yes. I believe that's the one to which Federal is. It's dated April 1204. April? That seems early to me, Your Honor. My point, Your Honor, is about the first amendment jurisprudence here was just that we have a well-established categorization, which you see in the cases between public forums and limited public forums and non-public forums. I know how to read this now. The message was Andy Gernon's message was dated 10-31-03. And it was sent from Nancy and Don Pearson to Ryan Bansal on April 12-04. Oh, I see. So it was actually the following spring that was a copy because this all occurred in the fall of 03. I'll give you a minute to close up. Okay. Do you have any idea what it meant when she said, is this in the record that counsel has the authority to open the record, but a decision to do so is very risky? No, I don't, Your Honor. I don't. I can't speak to that. The Petitioner's case is based on two first amendment issues I just quickly draw to your attention. One is this focus on informal, which we have that is not really, doesn't have a foundation in the case law. And secondly, with this concept of core political speech, and we would point out that the cases dealing with core political speech, McIntyre, Meyer, Burson v. Freeman, are really issues involving their public forum cases, involving election context, in at least two of the cases, content-based regulation. And the position the Court's taken in Knight clearly defines this. The final point we'd make, Your Honor, is with respect to the remedy here, as we've indicated Lemon v. Kurtzman, we believe, controls this and would require, this is not an issue that was addressed below, but would require looking at issues of vested rights and finality of prior determinations. And those are issues which are, of course, all fact-based issues on which the district court has conducted no fact-finding as yet. All right. Thank you, counsel. Thank you very much. Would you just clarify this memo?  It's, I believe, ER-28 in the record. And that e-mail from Ms. Pearson to my office, Ryan Vance was an associate of mine. She was forwarding it at the time of the summary judgment briefing in the lower court. The actual evidentiary part of the transmission is below that. And you'll see the e-mail from Ms. Pearson to Ms. Gernon on October 30. And the one below that from Councilwoman Gernon to Ms. Pearson was on October 29th, the one that says, Dear Nancy, I would be happy to meet with you, but goes on to say she won't because of the city attorney's advice. If I could, with regard to just one other point, then, Judge Wallace, he asked several times about if this advice had been legal. And the, as I think counsel just acknowledged, the city attorney may have had a good faith belief that this was a quasi-judicial proceeding and, therefore, ex parte context were prohibited. Maybe it was good faith belief. But in the end, it wasn't correct advice. As counsel also acknowledged, it's been determined this was a legislative proceeding and, therefore, the advice was not valid. But I think that also relates to why you asked the question, why did the attorney say there was great risk? She was thinking, well, maybe this is quasi-judicial. If it's quasi-judicial, you shouldn't be talking. And it would be risky for you to be talking with them ex parte. But she was wrong, as the hearings board determined. Thank you. Any other questions? No. All right. Thank you very much, counsel. Bridgeport Way Community Association v. City of Broadwood will be submitted. And this session in the court is adjourned for today. All rise. This court for this session stands adjourned.
judges: Wallace, Wardlaw, Fisher